IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-01389-WJM-KLM

GENETIC TECHNOLOGIES LIMITED, an Australian corporation,

       Plaintiff and Counter Defendant,

v.

AGILENT TECHNOLOGIES, INC., a Delaware corporation,
MERIAL L.L.C., a Delaware limited liability company,
PFIZER INC., a Delaware corporation,
454 LIFE SCIENCES CORPORATION, a Delaware corporation,
GENESEEK, INC., a Nebraska corporation, and
GLAXOSMITHKLINE LLC, a Delaware corporation,

       Defendants;

BRISTOL-MYERS SQUIBB COMPANY, a Delaware corporation,

       Defendant and Counter Claimant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

       This matter is before the Court on **Defendant 454 Life Sciences Corporation's**

**Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Sever**

**and to Transfer** [Docket No. 101; Filed August 15, 2011] (the "Motion").  All parties have

consented to the partial exercise of jurisdiction by the undersigned pursuant to 28 U.S.C.

§ 636(c)(1).  [#305].  Thus, presently pending before this Court are the Motion at issue,

Defendant Agilent Technologies, Inc.'s Motion to Dismiss [#174] and Motion to Transfer

Case [#178], Defendant Bristol-Myers Squibb Company's Motion to Sever and Transfer

Case [#175], Defendant Pfizer, Inc.'s Motion to Dismiss [#179] and Motion to Sever and

Transfer Case [#180], Defendant Merial L.L.C.'s Motion to Dismiss for Improper Venue [#181], Defendant GeneSeek, Inc.'s Motion to Dismiss [#194] and Motion to Sever and Transfer Case [#195], and Defendant GlaxoSmithKline LLC's Motion to Sever and Transfer Case [#255] and Motion to Dismiss [#256]. In consideration of the age of the Motion at issue, the Court addresses Defendant 454 Life Sciences Corporation's ["454"] Motion first. Written orders on the remaining motions will issue in due course.

Plaintiff submitted a Response in opposition to 454's Motion on September 16, 2011 [#135]. 454 filed a Reply on October 3, 2011 [#177]. The Motion is fully briefed and ripe for review. The Court has reviewed the briefing, the case record, and the applicable law, and is fully advised in the premises. For the reasons stated below, the Court **GRANTS IN PART** Defendant 454's Motion. The Court finds that 454 was misjoined, Plaintiff's claims against 454 must be severed, and the severed claims must be transferred to the District of Connecticut.

The Court incorporates by reference the factual background stated in its Order Denying Motion for Stay issued October 20, 2011 [#196]. In the present Motion, Defendant 454 requests that the Court dismiss the claims against it for lack of personal jurisdiction, or in the alternative, sever and transfer the claims to the U.S. District Court for the District of Connecticut.[1]

---

[1] The Motion additionally presents an argument for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), but the filing of the First Amended Complaint mooted this basis for dismissal. *See Reply*, [#177] at 1 n.1.

**I. Personal Jurisdiction**

The Court usually resolves jurisdictional questions before proceeding to evaluate the merits of a case; however, "there is no mandatory sequencing of jurisdictional issues." *Sinochem Int'l Co. Ltd. V. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotations and citation omitted). A district court may dismiss a case on grounds of *forum non conveniens* without addressing questions of subject matter or personal jurisdiction. *Sinochem*, 549 U.S. at 432. "For the federal court system, Congress has codified the [common-law doctrine of *forum non conveniens*] and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Id.* at 430. Thus, the Court evaluates 454's assertion of misjoinder and resulting request for severance and transfer without first discussing its challenge to personal jurisdiction.

Here, the Court concludes that 454 was misjoined, and the proper remedy is the severance and transfer of Plaintiff's claims against 454. Informing this result is 454's concession that "[p]ersonal jurisdiction over 454 and venue are clearly proper in the District of Connecticut." [#101] at 12. Notably, dismissal of Plaintiff's claims against 454 for lack of personal jurisdiction would be without prejudice, and would likely result in refiling of Plaintiff's claims against 454 in the appropriate jurisdiction. *Arocho v. Lappin*, No. 11-1278, 2012 WL 401516, at *4 (10th Cir. Feb. 9, 2012) (unpublished). Therefore, the Court finds that severance and transfer of Plaintiff's claims against 454 are the more efficient and just result. *See* Fed. R. Civ. P. 1. The Court begins with an analysis of joinder, and then evaluates 454's request for transfer.

## II.  Joinder

The Court must apply law from the Federal Circuit when evaluating certain jurisdictional issues in patent cases; however, "in matters not unique to patent law," the Court applies the law of the Tenth Circuit.  *E.g., In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) ("Because this petition does not involve substantive issues of patent law, this court applies the laws of the regional circuit in which the district court sits"); *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 596 n.3 (Fed. Cir. 1995) ("[I]n matters not unique to patent law the Federal Circuit applies the perceived law of the circuit in which the case was tried.").

"Rules 20 and 21 govern joinder and misjoinder of parties and claims."  *Nasious v. City & Cnty. of Denver*, 415 F. App'x 877, 880 (10th Cir. 2011).  Pursuant to Rule 20(a)(2), defendants may be joined in one action if two requirements are met: 1) the plaintiff's right to relief arises out of the same transaction or occurrence; and 2) the plaintiff's claims raise common questions of law or fact.  (It is uncontested that Plaintiff does not assert joint or several liability here, which would be a separate basis for joinder.)  "Misjoinder [under Rule 21], on the other hand, occurs when there is no common question of law or fact or when ... the events that give rise to the plaintiff's claims against defendants do not stem from the same transaction."  *Nasious*, 415 F. App'x at 880 (citing *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844 (3d Cir. 2006)) (emphasis added).  "To remedy misjoinder, ... the court has two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately."  *Id.* at 880-81 (citation omitted).  A trial court retains broad discretion as to whether to sever parties or claims.  *Nat'l Ass'n of Investors Corp. v. Bivio, Inc.*, No. 10-cv-00567-WJM-MEH,

2011 WL 1059835, at *2 (D. Colo. Mar. 21, 2011) (citing *German by German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y.1995)).

454 asserts that Plaintiff's claims against it "do not arise from the same transaction or occurrence as the other defendants." [#101] at 8. 454 explains that the only similarity between it and the other Defendants is the patent at issue (hereinafter the "'179 patent"); "each defendant is separately accused of infringement based on unique actions and different accused products." *Id.* 454 contends that it will be prejudiced in the absence of declared misjoinder, because its "opportunity to differentiate its products from the others will be unfairly constrained." *Id.*

Plaintiff opposes 454's position. Plaintiff states that courts in this Circuit have applied the "logical relationship" test to evaluating proper joinder, as opposed to the "factual commonality" test propounded by 454. [#135] at 14. Under the "logical relationship" test, Plaintiff suggests that all Defendants in this matter are properly joined, because they each allegedly infringed the same patent, and Plaintiff requests reasonable royalty damages from each as relief. *Id.* at 15. Further, Plaintiff contends that the affirmative defenses of invalidity and "royalty issues" will be the same for each Defendant. *Id.* at 15-16.

In reply, 454 avers that Plaintiff's attempted joinder in this matter fails the "logical relationship" test, because "[p]roving infringement for different equipment and genes will involve no overlapping proof or duplication in testimony." [#177] at 2. 454 asserts that the other Defendants' areas of business are not "remotely related" to its business, as "the other defendants are generally drug companies, laboratory research organizations, and molecular diagnostic retailers" who produce drugs, "seed genetics and agricultural genomic services, commercial molecular diagnostic reagents, and genetic testing products." *Id.*

Additionally, 454 references recently-enacted legislation, the America Invents Act ("AIA"), which prohibits joinder premised only on the allegation that all defendants in a lawsuit infringed the same patent. *Id.* at 3. 454 represents that the AIA applies only to cases filed on or after September 16, 2011. *Id.*

Plaintiff is correct in its assertion that the courts have taken different approaches to joinder in patent cases. The majority view is reflected in the AIA,[2] and the minority approach is enshrined in the "logical relationship" test. The phrase "logical relationship" comes from the Eighth Circuit's opinion in *Mosley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974). *Mosely* was not a patent case; that matter concerned union rights and race-based employment discrimination. In *Mosley*, the Eighth Circuit looked to a 1926 Supreme Court case to interpret the term "transaction" as used in Rule 20. 497 F.2d at 1333. The *Mosley* court found that "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* (citation omitted). The court found utility in allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Id.*

Based on the Court's review of the cases presented by the parties as well as its own research, the question of which joinder test to apply in patent cases (filed before

---

[2] 35 U.S.C. § 299 is the AIA's provision governing joinder of parties. Although 454 correctly states that the AIA applies only to cases filed on or after September 16, 2011, the Court views the AIA as persuasive authority. Section 299(b) explicitly prohibits joinder of accused infringers in one action "based solely on allegations that they each have infringed the patent or patents in suit." This provision further bars the consolidation for trial of actions premised only on allegations of infringement of the same patent or patents in suit.

September 16, 2011)[3] remains open in the Tenth Circuit.  In this District, another magistrate judge applied the *Mosley* logical relationship joinder test to permit joinder of additional defendants in a patent infringement lawsuit.  *See B&R Plastics, Inc. v. Kikkerland Design, Inc.*, No. 08-cv-02646-REB-MEH, 2009 WL 3698528 (D. Colo. Nov. 2, 2009).  In that order, the magistrate judge looked to use of the logical relationship test in *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 233 F.R.D. 615 (D. Kan. 2006) (a patent case) and *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 445 (E.D. Tex. 2004) (same).  *See also Rudd v. Lux Prod. Corp.*, No. 09-cv-6957, 2011 WL 148052, at *3 (N.D.Ill. Jan. 12, 2011) (recognizing *MyMail*'s approach as "in the minority").   However, another judge in this District recognized a case from the Southern District of New York, *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003), in which the court applied the majority approach in "den[ying] plaintiff's motion to join additional defendants in a case alleging patent infringement after finding that 'the only connection between the two sets of defendants is that they may have infringed the same patents owned by [plaintiff].'"  *MDM Group Assoc., Inc. v. Midgett Realty, Inc.*, No. 07-cv-02543-WDM-CBS, 2008 WL 2756926, *3 (D. Colo. July 14, 2008) (copyright lawsuit).

The Court holds that application of either the majority or minority approach results in a finding of misjoinder as to Defendant 454.  Pursuant to the allegations of the First Amended Complaint, each Defendant's activities are distinguishable from the others.[4]

---

[3]  A court in the Northern District of Illinois recently recognized that Congress, through the enactment of the AIA, abrogated the application of the logical relationship test in evaluating joinder in patent lawsuits.  *Body Science LLC v. Boston Scientific Corp.*, — F. Supp. 2d — , 2012 WL 718495, at *4 (N.D.Ill. Mar. 6, 2012).

[4]  Additionally, the alleged commencement dates of infringement, as reflected in the First Amended Complaint, range from unspecified (as to Defendant GeneSeek) to sometime before

According to the First Amended Complaint:

Defendant Agilent Technologies, Inc. ("Agilent") manufactured bioanalysis diagnostic instruments and laboratory equipment which allegedly infringed the '179 patent. [#150] at 8-10. Plaintiff states that these products have been used to characterize "genetic variations, including those caused by developmental abnormalities, disease susceptibility and differential drug responses." *Id.* at 10.

Defendant Bristol-Myers Squibb Company's ("Bristol-Myers") pharmacogenetic research and product development, and sponsorship of such research, allegedly infringed the '179 patent. *Id.* at 11-12. More specifically, Plaintiff contends that Bristol-Myer's testing activities related to certain pharmaceutical drugs, namely Warfarin and Clopidogral (Plavix), impermissibly utilized processes protected by the '179 patent. *Id.* at 13-14.

Defendant Eurofins STA Laboratories, Inc. ("Eurofins") engaged in laboratory work and created databases relating to the genotyping of plants which allegedly infringed the '179 Patent. *Id.* at 16-19. Eurofins has since been dismissed. [#289.]

Defendant GeneSeek, Inc. ("GeneSeek") allegedly infringed the '179 patent by its use of certain products for agricultural genetics services. [#150] at 20. The services provided by GeneSeek include genotyping, sample processing, and "marker-assisted selection." *Id.* It conducts testing on various kinds of domesticated animals (including cattle, goats, and swine) and various crops (including maize and soybeans). *Id.*

Defendant GlaxoSmithKline LLC's ("GSK") pharmacogenetic research and support of such research allegedly infringed the '179 patent. *Id.* at 23-24. Specifically, Plaintiff

---

August 12, 2009 (Defendant Eurofins). [#150] at ¶¶ 61, 64-73.

believes that GSK has impermissibly utilized the processes protected by the '179 patent in its testing and analysis of the pharmaceutical drugs Ziagen (Abacavir) and Tykerb (Lapatinib). *Id.* at 24.

Defendant Hologic, Inc. ("Hologic") sold diagnostic products which allegedly infringed the '179 Patent. *Id.* at 28-32. Hologic has since been dismissed. [#193].

Defendant Merial L.L.C. ("Merial") researched, developed and sold genetic tests for DNA markers in beef and dairy cattle which allegedly infringed the '179 Patent. [#150] at 30, 32.

Defendant Pfizer, Inc. ("Pfizer") allegedly infringed the '179 patent through pharmocogenetic research, as well as its funding of such research. *Id.* at 33. Specifically, Plaintiff believes that Pfizer has impermissibly utilized the processes protected by the '179 patent in its testing of and genotyping activities related to the pharmaceutical drugs Camptosar (Irinotecan) and Zoloft (Sertraline). *Id.* at 24.

Finally, 454 researched, developed, sold, and utilized genetic testing systems which allegedly infringed the '179 Patent. *Id.* at 39. An example presented by Plaintiff is that a 454 employee utilized a testing system "to determine if there was a genetic variation linked to Type 1 Diabetes." *Id.*

Plaintiff avers that two bases for joinder exist in this case: allegations of infringement of the same patent by each Defendant, and Plaintiff's request for damages in the form of a reasonable royalty from each Defendant. [#135] at 15. Plaintiff concedes that "each Defendant is alleged to have infringed using different equipment and by analyzing different genes." *Id.* Thus, Plaintiff and 454 appear to agree that the primary commonality between the named Defendants is limited to the Defendants' alleged infringement of the '179 patent.

Under these circumstances, the majority view precluding joinder based solely on allegations of infringement of the same patent would result in a finding of misjoinder as to 454. *E.g., Body Science LLC*, 2012 WL 718495 at *3 (collecting cases from various districts standing for the proposition "that a party fails to satisfy Rule 20(a)'s requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent.").

Regarding the minority approach, the Court distinguishes *B&R Plastics*, *Sprint Communications*, and *MyMail* from the case at issue.  The allegations in *B&R Plastics* involved "the manufacture, design, market and sale of the *same products*, and establish[ed] that all defendants use the *same Chinese importer*." 2009 WL 3698528 at *3 (emphasis added).  Here, each Defendant manufactures a different product or utilizes a different process challenged by Plaintiff.

In *Sprint Communications*, the district judge rejected the defendants' argument that joinder was improper because the defendants were competitors.  Although 454 uses its status as a competitor of the other Defendants as a basis for asserted prejudice (it is concerned about the possible disclosure of "highly confidential evidence" during the discovery process ([#101] at 11)), the facts of *Sprint Communications* concerned infringement of the same seven patents by the two grouped defendants (thereby indicating a greater level of similarity), and the raising of "several identical affirmative defenses." 233 F.R.D. at 617.  Here, only one patent is at issue, and it is apparent from the allegations in the First Amended Complaint that the technology described in the '179 patent may be used for multiple purposes and in many different products.  Further, only two Answers have been filed [## 173, 176], and one of the Answers is now moot due to the dismissal of the party

10

that filed it (Eurofins).  (Defendant Bristol-Myers filed the other Answer, which also asserts two counterclaims [#173].)  Whether Defendants will indeed assert identical affirmative defenses is simply unknown.

In *MyMail*, the district judge denied a motion to sever filed by the defendants in large part because, at that stage of litigation, the court concluded that it was not in a position to determine "whether the [defendants'] products or methods are substantially similar or dissimilar to the other defendants'."  223 F.R.D. at 457.  Thus, the judge permitted joinder based on facts presented by the plaintiff that "the [defendants] have utilized *shared resources*, such as dial-up Internet access numbers, with the other defendants," in addition to the allegations of infringement of the same patent ("which describes a method and apparatus for accessing a computer network by a roaming user").  *Id.* at 456, 457 (emphasis added).  Here, there are no allegations linking Defendants to each other, other than the single patent at issue (and that Plaintiff requests damages in the form of a reasonable royalty from each Defendant, further addressed below).

In simple terms, although Plaintiff's claims raise common questions of patent law, Plaintiff's right to relief regarding Defendant 454 in relation to the other Defendants does not arise from the same transaction or occurrence, pursuant to either the minority or majority approach to joinder in patent cases.  Although some overlap may occur in terms of evidence and case proceedings (such as in claim construction), the variety in the allegedly infringing products manufactured or processes employed by each Defendant is too pronounced to be properly considered as arising out of the same transaction or occurrence, based on the allegations in the First Amended Complaint.  *See* [#150]. Moreover, proving and evaluating damages pursuant to a reasonable royalty theory is a

11

fact-intensive analysis that will require information unique to each Defendant.  *See BIAX Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 208 (D. Colo. 2010) (citations omitted) (referring to multiple factors for judicial consideration when evaluating a request for damages pursuant to a reasonable royalty).  Although severing the claims in this case may result in multiple proceedings concerning the same patent, the  purpose of permissive joinder pursuant to Rule 20 is not ultimately met by maintaining the status quo.[5]

Joinder is intended "to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits."  *Nat'l Ass'n of Investors Corp.*, 2011 WL 1059835 at *2 (citation omitted).  However, this intention is tempered by the requirement that joinder of defendants must be based on the *same* transaction or occurrence.  Fed. R. Civ. P. 20(a)(2) (emphasis added).  The variety in the allegedly infringing activities as described in the First Amended Complaint, whether manufacture of products or engagement in certain research or analysis processes, is simply too significant to make joinder efficient.  The evidence demonstrating how each individual Defendant did or did not infringe is unlikely to overlap in a meaningful way.  Requiring the Court, and possibly a jury, to fairly adjudicate Plaintiff's claims of infringement by evaluating the patent at issue in terms of multiple types of products and research processes utilized for a wide variety of markets (*i.e.*, different pharmaceutical drugs, and different testing applicable to humans, animals, and crops) would be burdensome and likely confusing for all parties

---

[5] Further, review of the legislative history of the AIA bolsters the Court's conclusion.  The provision in the AIA regarding joinder "addresse[d] problems occasioned by the joinder of defendants (sometimes numbering in the dozens) who have tenuous connections to the underlying disputes in patent infringement suits."  H.R. Rep. 112-98(I), at *54-55 (2011).  The legislative history explicitly stated that "Section 299 legislatively abrogates the construction of Rule 20(a)" propounded by multiple cases, including *MyMail* and *Sprint Communications*.  H.R. Rep. 112-98(I) at n.61.

involved.  Therefore, the Court finds that Plaintiff's right to relief as to Defendant 454 does not arise out of the same transaction as the other Defendants, and 454 was misjoined in this matter.

Dismissal is not a proper consequence of misjoinder.  Fed. R. Civ. P. 21.  Pursuant to the plain language of Rule 21, the Court may "sever any claim against a party" to remedy misjoinder.  *Id.*  Accordingly, the Court severs Plaintiff's claims against 454.

## III.  Transfer

The Court turns to 454's request for transfer.  "Change of venue in patent cases, like other civil cases, is governed by 28 U.S.C. § 1404(a)."  *In re TS Tech USA Corp.*, 551 F.3d at 1319.  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  "The decision whether to transfer an action lies within the sound discretion of the trial judge."  *Telecomm. Sys., Inc. v. TracBeam, L.L.C.*, No. 11-cv-02519-WYD-MJW, 2012 WL 371578, at *1 (D. Colo. Feb. 6, 2012) (citing *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978)).

"Section 1404(a) only authorizes the transfer of an entire action, not individual claims."  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 929 F.2d 1509, 1518 (10th Cir. 1991) (citation omitted).  However, because the Court has properly severed Plaintiff's claims against 454 pursuant to Rule 21, two separate actions will result.  *Chrysler Credit Corp.*, 929 F.2d at 1519.  The Court may transfer the severed action while retaining jurisdiction over the remaining action.  *Id.* ("The severed case [may be] transferred in its entirety while the retained case remains in its entirety in the transferor court.")

13

The Court evaluates requests for transfer "according to an individualized, case-by-case consideration of convenience and fairness." *Telecomm. Sys., Inc.*, 2012 WL 371578 at *1 (internal quotation and citations omitted).

> Among the factors a district court should consider are: (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment; (5) the relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other practical considerations that make a trial easy, expeditious and economical.

*Id.* (citation omitted).

454 asserts that transfer of the severed claims to the District of Connecticut is proper. 454 represents that the District of Connecticut satisfies the threshold considerations regarding venue, in that 454's principal place of business is located in the District of Connecticut. [#101] at 12. Thus, 454 concedes that "[p]ersonal jurisdiction over 454 and venue are clearly proper in the District of Connecticut." *Id.* 454 avers that the above-stated factors weigh heavily in favor of transfer. *See id.* at 13-16.

Plaintiff opposes 454's request for transfer. *See* [#135]. Plaintiff explains that its "Vice President of Global Licensing and Intellectual Property" has offices located in Larimer County, Colorado, and documentation relevant to the present dispute is located in its counsel's Denver offices. *Id.* at 17-18. Plaintiff contends that 454 does not meet its burden of showing that transfer is appropriate. Further, Plaintiff states that practical considerations dictate denial of 454's request, claiming that "it would be economical and expeditious for a single Court to hold a single *Markman* hearing, rather than have several courts hear

14

argument and issue possibly inconsistent claim constructions." *Id.* at 19.

In its Reply, 454 attests that the Vice President referred to by Plaintiff is "currently standing trial in Australia Criminal Court for securities violations . . . ." [#177] at 5.  Further, 454 emphasizes that the material documents and witnesses relevant to this case are located in Connecticut.  *Id.* at 6-7.  454 restates its position that the factors applicable to transfer weigh in favor of changing venue.

The Court addresses the factors emphasized by Plaintiff and 454, in turn.

### 1. Plaintiff's Choice of Forum

"Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed."  *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (citation omitted).  However, "[c]ourts also accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."  *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) (internal quotation and citation omitted).  Pursuant to the parties' briefing and the First Amended Complaint, the asserted connections of this lawsuit to the District of Colorado include allegations that 454 has an interactive website; 454 is an alter ego of Roche, which formerly maintained a location in Colorado; two of the accused products are present in Colorado; Plaintiff's Vice President has an office in Larimer County, Colorado; and Plaintiff's litigation documents are located in counsel's Denver office.  *See* [#135].

The latter two points are easily disposed of: 454 points out that the Vice President is actually in Australia due to criminal proceedings, and in any event, the lack of factual detail regarding this individual's connection to Larimer County supports 454's position that this argument should be given little weight.  Next, the location of the documents in the

15

possession of Plaintiff's counsel does not bear on the Court's determination of the transfer issue. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009) ("Thus, the assertion that these documents [sent to litigation counsel] are [forum state] documents is a fiction which appears to be have been created to manipulate the propriety of venue."). Regarding 454's website, for purposes of the transfer analysis, the Court accepts 454's representations that its website is not specifically targeted to customers in Colorado, nor does it readily allow for the purchase of its products via the Internet.[6]  [#177] at 9.

As for Plaintiff's alter ego theory, the Court agrees with 454 that this theory is not properly pled, and the same is true regarding the asserted presence of two of the accused products in Colorado.  [#177] at 11.  The First Amended Complaint includes no allegations of 454's alleged alter ego relationship, nor does it include allegations related to the use of accused products in any specific location by any particular individual or entity, other than the use of an accused product by a 454 employee at an undisclosed location.  *See* [#150] at 39-40, 48-49; *see also Marcinkowska v. IMG Worldwide, Inc.*, 342 F. App'x 632, 635 (Fed. Cir. 2009) (upholding a finding of no specific jurisdiction, by way of example only, in part because the operative pleading contained insufficient facts alleging patent infringement in the forum state).  In any event, the Court agrees with 454 that "a parent-subsidiary relationship, in and of itself, does not warrant a finding that 454 is an alter ego."  [#177] at 12 (citing *Skidmore, Owings & Merrill v. Canada Life Assur. Co.*, 907 F.2d 1026, 1027 (10th Cir. 1990) ("[a]bsent circumstances justifying disregard of the corporate form, a parent

---

[6]  The Court confirms this by taking judicial notice of 454's website: http://454.com/ (last visited February 14, 2012).  *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979) (the court may take judicial notice of matters of public record).

company is treated as a legal entity separate from the subsidiary.")).

Plaintiff's allegation that two of 454's machines ended up in Colorado, in the context of the facts at hand (namely, that 454 does not have a physical presence in Colorado, and the absence of allegations that 454 directly targeted Colorado for marketing or sales) does not sway the Court from its inclination to give little weight to Plaintiff's choice of forum. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2790 (2011) ("defendant does not have a single contact with New Jersey short of the machine in question ending up in this state."). Plaintiff is an Australian corporation, and 454 is a Delaware corporation with its principal place of business in Connecticut. [#150] at 2. "[M]any courts give substantially less, if any, deference to the plaintiff's choice of forum when the plaintiff resides elsewhere." *Telecomm. Sys., Inc.*, 2012 WL 371578 at *2 (citation omitted). Notably, since the dismissal of Defendant Eurofins, no party has its state of incorporation or principal place of business in Colorado. In light of the circumstances described above, the Court does not defer to Plaintiff's choice of forum.

### 2. Convenience to Witnesses and for Evidence

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (citation omitted). 454 attests that all of its witnesses and evidence are located in Connecticut, which is its principal place of business. [#101] at 13-14; [#177] at 6 (identifying Chris McLeod and Ivor Elrifi, both located in Connecticut, as "important" witnesses). Again, Plaintiff is an Australian corporation, and the only individual identified as a potential witness on behalf of Plaintiff in its briefing (the asserted Vice President) is presumably in Australia due to the criminal proceeding, and nonetheless, has vaguely described and questionably relevant ties to

17

Colorado. *See* [#177-1] at 3. The other potential witness for Plaintiff, as identified by 454, is presumably also located in Australia. *See* [#177-2] (witness' curriculum vitae). This factor weighs in favor of transfer.

### 3. Cost

The factor considering cost relates to the factor concerning witness convenience, in that the cost for witnesses located in Connecticut to attend proceedings in Colorado will obviously be greater than costs incurred if the same witnesses attend proceedings in Connecticut. *See Sackett v. Denver & Rio Grande W. R.R. Co.*, 603 F. Supp. 260, 261 (1985) (finding expense of transporting witnesses 500 miles as "more than negligible"). Plaintiff's argument that the witnesses need only testify by deposition contravenes 454's entitlement to its own litigation strategy, and assumes that the Court would permit trial testimony by transcript only or by video. *See* [#135] at 18; *see also* [#177] at 7. The Court is not persuaded by Plaintiff's contention, and finds that this factor weighs in favor of transfer.

### 4. Docket Congestion

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169. Based on the calculations offered by Plaintiff, the median time from filing to disposition is 5.8 months in Colorado and 7.1 months in Connecticut, and the median time from filing to trial is 29.1 months in Colorado and 29.2 months in Connecticut. *See* [#135] at 19. The averaged weighted filings per judge are 515 in Colorado and 320 in Connecticut. *Id.* According to these statistics, this factor slightly favors transfer.

### 5. *Localized Interest and Remaining Factors*

454 asserts that this District "does not have a real localized interest in the outcome" of this dispute, whereas the District of Connecticut does, "as its serves as the home of the key business and individuals involved with the accused products." [#101] at 15-16. The Court agrees. The only named Defendant located in Colorado has been dismissed (Eurofins), and the remaining parties, including Plaintiff, bear tenuous (if any) connection to this forum. This factor weighs in favor of transfer.

Plaintiff does not challenge 454's contentions as to this factor, but emphasizes that judicial economy and consistency favor that a single court hold the *Markman* hearing (and presumably other pretrial proceedings) as to Plaintiff's claims against all Defendants in this case. [#135] at 14. 454 counters by stating that the infringement contentions made against 454 and its unique defenses of laches, estoppel, and waiver necessitate individualized judicial review. [#177] at 8.

The Court agrees with both Plaintiff and 454 on this issue. One *Markman* hearing as to the claims at issue would be efficient and would guarantee consistency. However, as explained above, the Court finds that the considerations against joinder in cases in which infringement of the same patent is the only commonality among defendants outweigh the potential efficiencies of maintaining the status quo in the lawsuit at issue. Therefore, the Court finds that transfer of the severed claims against 454 to the District of Connecticut is proper.[7]

---

[7] Commensurate with its opposition to 454's request for transfer, Plaintiff requests that, should the Court sever its claims against 454, the severed action be consolidated with the action at issue for pretrial proceedings. [#135] at 17. This request is mooted by the Court's conclusion that the above-stated factors weigh in favor of transfer.

## IV. Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that Defendant 454 Life Sciences Corporation's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Sever and to Transfer [#101] is **GRANTED IN PART**.  The Court finds that 454 was **MISJOINED** as a defendant to this action, thus Plaintiff's claims against 454 are **SEVERED**.

IT IS FURTHER **ORDERED** that the Clerk of Court is directed to open a new case for the severed claims against Defendant 454.  The Clerk of Court is directed to file a copy of the Amended Complaint [#150], the Scheduling Order [#258], and a copy of this Order in the new action.  The Scheduling Order will govern the severed claims until otherwise ordered by the court in the District of Connecticut.  The new action shall be captioned as follows:

GENETIC TECHNOLOGIES LIMITED, an Australian corporation,

      Plaintiff,

v.

454 LIFE SCIENCES CORPORATION, a Delaware corporation,

      Defendant.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **TRANSFER** the complete case file containing the severed claims to the District of Connecticut.

IT IS FURTHER **ORDERED** that Defendant 454 is **DROPPED** as a named party to this action, and the case caption shall be **AMENDED** accordingly.

Dated: March 23, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge